UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHAN GUNAWAN, et al.<br><br>       Plaintiffs,<br><br>   -v-<br><br>STEPHEN JOHHNSTON, SR., et al.,<br><br>       Defendants. | 26-cv-1056 (JSR)<br><br>MEMORANDUM ORDER |

JED S. RAKOFF, U.S.D.J.:

On May 22, 2026, the Court issued a "bottom-line" Order granting defendants' motion to dismiss Count II of the complaint. This Opinion sets forth the reasons for that Order.

I.  **Background**

This case involves a commercial dispute over unpaid receivables between plaintiff Arbigo Inc., a New York company, and defendant PubWise, LLLP, a Georgia company. Compl. ¶¶ 3, 6, ECF No. 3. Arbigo and Pubwise are both digital advertising platforms that participate in the purchase and sale of online advertising space. Id. ¶¶ 14-18. Plaintiff Johan Gunawan ("Gunawan"), an individual and resident of Pennsylvania, is the Chief Executive Officer and sole owner of Arbigo and the other plaintiff entities. Id. ¶¶ 1-4, 14. Defendant Stephen Johnston, Sr. ("Johnston Sr."), an individual and resident of Georgia, is PubWise's Chairman and Chief Executive Officer. Id. ¶ 5. Defendant Stephen Johnston, Jr. ("Johnston Jr."), an individual and resident of Georgia, is PubWise's Founder and Chief Technology Officer. Id. ¶ 6.

1

On December 11, 2020, Arbigo and PubWise entered into a Mutual Master Services Agreement (the "MSA"). Id. ¶ 10; Compl., Ex. A ("MSA"). The MSA was signed by Gunawan on behalf of Arbigo and by Dwight Ringdahl, PubWise's Chief Revenue Officer, on behalf of PubWise. MSA at 11. Neither Johnston Sr. nor Johnston Jr. was a signatory to the MSA. See id.; Compl. ¶ 46.

Thereafter, according to the complaint, PubWise breached the MSA by failing to pay Arbigo outstanding receivables in the amount of $232,367.12. Compl. ¶ 11. PubWise's failure to pay the amount due left Arbigo unable to satisfy its own obligations to several other companies. Id. ¶¶ 21, 29-31, 38-39. Knowing of Arbigo's financial situation, Johnston Sr., "with the knowledge and encouragement of Johnston Jr.," falsely represented to Gunawan that he was in the process of raising money that would satisfy PubWise's financial obligations to Arbigo and that he would "assist in paying the outstanding balances." Id. ¶¶ 47-51. In reliance on these representations, Gunawan obtained a high-interest loan to provide Arbigo with bridge financing until the money from PubWise came in. Plaintiffs allege that Johnston, Sr. promised to "assist in the repayment". Id. ¶¶ 49-50. Ultimately, however, PubWise made no further payments on its debt. Id. ¶ 70. As a result, Arbigo lost two of its major accounts and was left with significant additional debt in the form of the high-interest loans it had taken out. Id. ¶¶ 84, 87.

On February 9, 2026, plaintiffs initiated this action, alleging a breach of contract claim against PubWise ("Count I") and, as relevant

here, one count of fraud in the inducement against Johnston Sr. and Johnston Jr. ("Count II"). Only the individual defendants, Johnston Sr. and Johnston Jr. (collectively, the "Johnston Defendants"), have moved to dismiss, citing Federal Rule of Procedure 12(b)(1) (lack of personal jurisdiction) and 12(b)(6) (failure to state a claim). For the reasons discussed below, the Court, by the Order of May 22, 2026, granted defendants' motion and dismissed Count II.

## II.  Legal Standards

On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing jurisdiction through legally sufficient allegations of fact. Metro. Life Ins. Co. v. Robertson Ceco Corp., 84 F.3d 560, 566 (2d Cir. 1996). The exercise of personal jurisdiction must comport with the forum state's long-arm statute and the Due Process Clause. Walden v. Fiore, 571 U.S. 277, 283 (2014). Here, New York supplies the relevant law. See N.Y. C.P.L.R. § 302.

On a motion to dismiss for failure to state a claim, the court must determine whether the complaint's well-pleaded factual allegations "plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009). Claims for fraud are subject to the heightened pleading standard of Rule 9(b), which requires a complaint to "state with particularity" the circumstances constituting fraud. See Wexner v. First Manhattan Co., 902 F.2d 169, 172 (2d Cir. 1990); see also Fed. R. Civ. P. 9(b).

**III.   <u>Discussion</u>**

**A. <u>Personal Jurisdiction</u>**

To satisfy New York's long-arm statute, plaintiffs appear to rely on § 302(a)(1), which provides for personal jurisdiction over a non-domiciliary who "transacts any business within the state." N.Y. C.P.L.R. § 302(a)(1). This subsection is satisfied if (1) the defendant transacted business in New York and (2) the plaintiff's cause of action arises from that transaction.[1] <u>Licci v. Lebanese Canadian Bank</u>, 20 N.Y.3d 327, 334 (2012).

In an attempt to satisfy the first prong of this analysis, plaintiffs argue in their briefing that the Johnston Defendants transacted business with three companies in New York City. This is unsupported by any allegations in the complaint. But, even if the complaint could be amended to include such allegations, that would still be insufficient to establish personal jurisdiction over the Johnston Defendants, as individuals, for the following reasons.

First, the transactions in question appear to be PubWise's transactions, not the personal transactions of either of the Johnston Defendants individually. While both defendants have leadership roles at PubWise, their positions within an organization subject to the

_____

[1] Although the MSA contains a forum selection clause submitting to the exclusive jurisdiction of the New York courts, MSA ¶ 9.1, neither of the Johnston Defendants personally signed the MSA, and plaintiffs concede that the MSA's forum-selection clause does not provide a basis for asserting New York jurisdiction over the Johnston Defendants.

Court's jurisdiction "does not in and of itself confer jurisdiction" over them individually. Coast to Coast Energy, Inc v. Gasarch, 149 A.D.3d 485, 487 (N.Y. 1st Dep't 2017). Thus, even if the Johnston Defendants transacted on behalf of PubWise with three New York companies, those transactions would not establish personal jurisdiction over the Johnston Defendants individually. See Marine Midland Bank, N.A. v. Miller, 664 F.2d 899, 902 (2d Cir. 1981)(actions a defendant takes on behalf of a company do not inherently allow the state to exercise personal jurisdiction over the defendant as an individual).

Second, and independently, plaintiffs have not met the second prong of the jurisdictional analysis. To satisfy this prong, there must be an "articulable nexus" between the plaintiff's cause of action and the business allegedly transacted by the defendant in New York. Licci, 20 N.Y.3d at 339. Plaintiffs have not explained how the three transactions alleged in their briefs are in any way related to their fraudulent inducement claim against the Johnston Defendants. Plaintiffs therefore have not met their burden of showing that New York has personal jurisdiction over the Johnston Defendants under § 302(a)(1).

Lastly, plaintiffs also argue that this Court has personal jurisdiction over the Johnston Defendants because plaintiff Arbigo is a New York company and has suffered financial harm in New York. It is well established, however, that "[t]he occurrence of financial consequences in New York" due to plaintiff's location in the forum is

insufficient to establish personal jurisdiction over the defendant "where the underlying events took place outside New York." Whitaker v. Am. Telecasting, Inc., 261 F.3d 196, 209 (2d Cir. 2001); see also Walden, 571 U.S. at 285 ("[T]he plaintiff cannot be the only link between the defendant and the forum.").

Plaintiffs concede that all conduct underlying the alleged fraud took place outside New York. The communications were sent from Georgia and were received by Gunawan in Pennsylvania. Therefore, even assuming that Arbigo suffered financial harm in New York, that alone offers no basis on which the Court could exercise personal jurisdiction over the Johnston Defendants. U.S. Bank Nat'l Ass'n v. Bank of Am. N.A., 916 F.3d 143, 151 (2d Cir. 2019)(personal jurisdiction will not be exercised based on a mere showing that the effects of defendants' actions were felt by plaintiffs in the forum state).

Accordingly, because plaintiffs have failed to demonstrate that this Court has personal jurisdiction over the Johnston Defendants, Count II must be dismissed.

B. **Failure to State a Claim**

Count II also must be dismissed for the independent reason that the complaint fails to state a claim for fraud in the inducement against either defendant. "Under New York law, to state a claim for fraud, a plaintiff must demonstrate: (1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused

injury to the plaintiff." Wynn v. AC Rochester, 273 F.3d 153, 156 (2d Cir. 2001) (per curiam).

A party pleading a fraudulent inducement claim also must satisfy the heightened pleading standard under Rule 9(b), which requires that the complaint "state with particularity the circumstances constituting fraud." PetEdge, Inc. v. Garg, 234 F. Supp. 3d 477, 490 (S.D.N.Y. 2017) (quoting Fed. R. Civ. P. 9(b)). Although "conditions of a person's mind may be alleged generally," Fed. R. Civ. P. 9(b), the complaint must still "adduce specific facts supporting a strong inference of fraud," Wexner, 902 F.2d at 172. A fraud claim cannot lie based on mere "speculation and conclusory allegations." Id.

### 1. Johnston Jr.

The complaint fails to plead facts supporting a fraudulent inducement claim against Johnston Jr. The only allegations in the complaint specific to Johnston Jr. concern his failure to respond to Gunawan's five LinkedIn messages about PubWise's debt to Arbigo. Absent a duty to disclose, however, a party's silence cannot serve as a basis for a fraud claim. Brass v. American Film Technologies, Inc., 987 F.2d 142, 150 (2d Cir. 1993).

A duty to disclose arises under New York law in only three circumstances, none of which applies to Johnston Jr. First, a duty to disclose may arise when the parties are in a fiduciary or confidential relationship. Id. at 150. Second, a duty to disclose may arise when a party makes a misleading or ambiguous statement that requires correcting. Id. Third, under "the special facts doctrine," a party to

7

a sales transaction has a duty to disclose superior knowledge not readily available to the other party. See Hahn v. Dewey & LeBoeuf Liquidation Tr., 143 A.D.3d 547, 548 (N.Y. 1st Dep't 2016).

Plaintiffs do not allege that Johnston Jr. has a fiduciary or confidential relationship with Gunawan or Arbigo. Johnston Jr. was not a party to the MSA, and the MSA itself provides that the contracting parties (Arbigo and PubWise) were arms-length independent contractors with no authority to bind one another. MSA § 9.7.

The complaint also does not allege that Johnston Jr. ever made a misleading statement that required correction. Rather, the complaint alleges that he made no statement at all, as he never responded to any of Gunawan's LinkedIn messages. Compl. ¶ 52.

Finally, the special facts doctrine is inapplicable here. The doctrine "applies to claims of fraud in sales transactions" and requires an underlying transaction between the parties in which the defendant possessed superior knowledge. Hahn, 143 A.D.3d at 539. The complaint does not allege anything of the sort.

Plaintiffs also suggest that Johnston Jr. is responsible for the alleged fraud based on his status as a "controlling person" of Pubwise who "knew or should have known" of the fraud. MTD Opp. at 7 n.2. Corporate officers, however, "are not liable for fraud unless they personally participate in the misrepresentation or have actual knowledge of it." Marine Midland, 50 N.Y.2d at 44. For the reasons just discussed, the complaint does not allege any personal participation by Johnston Jr. in any misrepresentation.

8

The complaint also does not plausibly allege that Johnston Jr. had "actual knowledge" of the alleged fraud. The only allegations connecting Johnston Jr. to his father's alleged misrepresentations are conclusory allegations that Johnston Sr. acted "with the knowledge, assistance, and encouragement" of Johnston Jr. See e.g., Compl. ¶¶ 11, 50, 51, 71, 84, 87, 88. The complaint does not allege any facts to support these assertions. For example, the complaint does not allege that Johnston Jr. saw or was told about any of Johnston Sr.'s text messages to Gunawan, that he participated in or was present for any communication between them, or that he had any other involvement in the conduct underlying the fraud claim. Accordingly, the complaint fails to adduce any "specific facts supporting a strong inference" that Johnston Jr. participated in the alleged fraud. Wexner, 902 F.2d at 172. The fraud claim against Johnston Jr. must be dismissed.

### 2. Johnston Sr.

In addition to the specific defects in the complaint that pertain to Johnston Jr., the complaint's fraud allegations are deficient for two additional reasons and therefore must be dismissed against Johnston Sr. as well.

First, the complaint's allegations do not support a "'strong inference' of fraudulent intent." Ouaknine v. MacFarlane, 897 F.2d 75, 80 (2d Cir. 1990) (quoting Beck v. Mfrs. Hanover Trust Co., 820 F.2d 46, 50 (2d Cir. 1987)). In essence, the theory of fraud alleged in the complaint is that Johnston Sr. communicated to Gunawan a series of ongoing efforts to secure funding for PubWise that would enable Pubwise

to pay its outstanding debt to Arbigo, but that those statements were "false representations of material fact." See e.g., Compl. ¶¶ 55-58, 62-63. The complaint, however, alleges no particularized facts to support its claim that Johnston Sr.'s descriptions of PubWise's attempt to secure funds were made with fraudulent intent, relying entirely on generalized "information and belief." See, e.g., id. ¶¶ 48, 49, 51, 63, 66, 71. The mere fact that PubWise ultimately failed to make payments on its debt to Arbigo does not give rise to a "strong inference" that Johnston Sr.'s statements were false when made. An equally, if not more, plausible inference, is that Johnston Sr. was attempting to secure funding and that the funding efforts ultimately failed. See, e.g., Compl., Ex. I (message from Johnston Sr. to Gunawan that "I waited until the last minute hoping for the funds I was promised would come in," but "[t]hey have not"); Compl., Ex. Q (message from Johnston Sr. to Gunawan that "I have not been successful in getting a firm commitment to funding"). Because the complaint's well-pleaded allegations are consistent, at most, with the "mere possibility of misconduct," the fraud claim must be dismissed. Iqbal, 556 U.S. at 678-79.

Second, the fraud claim also must be dismissed because it is duplicative of the breach of contract claim against PubWise. "Under New York Law, false statements indicating an intent to perform under a contract are insufficient to support a claim of fraud," PetEdge, 234 F. Supp. 3d at 491 (citing Bridgestone/Firestone, Inc v. Recovery Credit Servs., Inc., 98 F.3d 13, 19-20 (2d Cir. 1996)), and are subject

to dismissal as duplicative of a breach of contract claim. "[E]ven intentionally misleading statements by a defendant falsely indicating an intent to perform under a[n] [existing] contract . . . do not give rise to an action for fraud." IKEA N. Am. Servs. v. Northeast Graphics, Inc., 56 F. Supp. 2d 340, 342 (S.D.N.Y. 1999).

Here, the complaint's allegations are, in essence, that Johnston Sr. continued telling Gunawan that payment from PubWise was forthcoming even when PubWise could not or would not pay its debt to Arbigo. See e.g., Compl. ¶ 11 ("Johnston, Sr. over the years . . . made multiple false promises and representations to remit [PubWise's] outstanding accounts receivable . . . to Arbigo, Inc."); id. ¶ 47(Johnston Sr. "represented in hundreds of texts, several emails, and phone conversations with Gunawan that he would assist in paying the outstanding balances that were due"); id. ¶ 71("While Johnston Sr. was actively making false promises of present fact to pay the loans and interest . . . he, in truth, had no intention, upon information and belief, of ever making any payments to Gunawan or his business."). At most, these allegations demonstrate "an unkept promise to perform . . . preexisting obligations under the [MSA]," not a separate claim for fraud. Cronos Grp. Ltd. v. XComIP, LLC, 156 A.D.3d 54, 64 (N.Y. 1st Dep't 2017).

Additionally, to the extent that plaintiffs suggest that Johnston Sr. made a separate promise to help Arbigo make payments on its new high-interest loans, that claim is unsupported by any factual allegations in the complaint. None of the statements the complaint

11

attributes to Johnston Sr., nor any of the statements reproduced in the attached exhibits, demonstrates that any such promise was made. The only alleged communication from Johnston Sr. relating to a new loan is an email from Johnston Sr. to Gunawan and a lender asking the lender to "send us the Terms of the offer," Compl. ¶ 50; Compl., Ex. E, and a text from Johnston Sr. to Gunawan encouraging him to accept one of two lending offers Gunawan described, see Compl., Ex. U. None of these communications or any other facts alleged in the complaint suggest that either of the Johnston Defendants made a new promise to help Arbigo repay its new debt.

The fraud in the inducement claim is based, at most, on Johnston Sr.'s allegedly unkept promise to perform under the MSA. It is therefore indistinguishable from the breach of contract claim asserted in Count I and must be dismissed.

## IV.   Conclusion

For the foregoing reasons, the Court reconfirms its bottom-line Order dismissing Count II. The Clerk of Court is respectfully directed to enter final judgment with respect to that Count.

SO ORDERED.

New York, NY
June 30, 2026

_____
JED S. RAKOFF, U.S.D.J.

12